Donald OESAU, Lloyd O'Conner, Orville Braswell, Lyle Smith, and Marie Barry, Appellants,

v.

CITY OF DILLINGHAM, Appellee.

No. 856.

Supreme Court of Alaska.

April 1, 1968.

James K. Tallman, Anchorage, for appellants.

David J. Pree and Robert C. Ely, of Ely, Guess, Rudd & Havelock, Anchorage, for appellee.

Before NESBETT, C. J., and DIMOND and RABINOWITZ, JJ.

## OPINION

DIMOND, Justice.

Prior to 1963, the platted townsite of Dillingham, Alaska was not an incorporated municipality, but was a part of a larger area which had been incorporated as the Dillingham Public Utility District No. 1. In enacting legislation pertaining to bor-

ough government in Alaska, the legislature provided that special service districts, such as the Dillingham Public Utility District, would "continue to exercise their powers and functions under existing law until July 1, 1964." [1] Thus, the dissolution of the Dillingham Public Utility District No. 1 was foreordained.

In 1963 there were two separate moves to establish incorporated municipal government in Dillingham. On April 3, 1963, one group of persons filed a petition in the district court to incorporate as a fourth class city, to be known as Wood River, Alaska, all of the area of the Dillingham Public Utility District except the area encompassed by the platted townsite of Dillingham. Following a hearing and an election pursuant to statute [2] the district court on June 30, 1963 entered an order declaring that Wood River was incorporated as a city of the fourth class.

In the meantime, on April 24, 1963, another group of persons filed a petition in the superior court proposing incorporation as a second class city all of the area of the Dillingham Public Utility District No. 1. Following a hearing and an election pursuant to statute [3], the superior court entered an order on July 12, 1963 declaring Dillingham incorporated as a second class city. The boundaries of the city encompassed the entire area of the Dillingham Public Utility District No. 1, including the area covered by the fourth class city of Wood River which had been declared incorporated by the district court a few days earlier.

These two separate incorporations resulted in a boundary dispute between Wood River and Dillingham—Wood River claiming to be an incorporated city in its own right, and Dillingham claiming that its boundaries included Wood River. A report of this boundary dispute was made to the state local boundary commission by the Local Affairs Agency in August 1964. Following a hearing in Dillingham held

1.  AS 07.05.030.
2.  AS 29.25.010–29.25.510.

3.  AS 29.15.010–29.15.300.

pursuant to law [4], the boundary commission issued a memorandum providing that if by January 1, 1965 the residents of the Dillingham-Wood River area had not taken positive steps toward the formation of an organized borough or a single city capable of meeting the area's needs and responsibilities in local government, the commission would propose a solution. Nothing was done by the residents of the area to solve the problem, and on February 2, 1965 the boundary commission, in accordance with law,[5] recommended to the legislature that the fourth class city of Wood River be dissolved, that the assets and liabilities of Wood River be transferred to the City of Dillingham, and that the boundaries of the City of Dillingham be defined so as to include the area of Wood River. The legislature did not disapprove of the commission's recommendation, and hence it became effective by virtue of the state constitution and statute.[6] In addition, during the 1965 legislative session where the boundary commission recommendation was presented, the legislature enacted a statute recognizing the

dissolution of Wood River and the confirmation of the boundaries of the City of Dillingham pursuant to the commission's recommendation, and required that a special election be held for the offices of mayor and council constituting the governing body of the City of Dillingham.[7]

This action was commenced in May 1966 by the City of Dillingham against the members of the city council of Wood River to have Wood River declared to be dissolved and a nullity and to enjoin those persons purporting to act on behalf of the city of Wood River from so acting. Summary judgment was granted in favor of appellee, the court ordering as follows:

> ORDERED that there are no issues of fact in dispute between the parties to this action and that the law is clear that the City of Wood River, Alaska, incorporated as a city of the fourth class, July 30th, 1963, ceased to exist on April 9th, 1965 pursuant to "Recommendations for Local Boundary Changes Submitted to the Fourth State Legislature, First Session

4. AS 44.19.260(b) (1) provides:
   The local boundary commission may conduct meetings and hearings to consider local government boundary changes and other matters related to local government boundary changes, including extensions of services by incorporated cities into contiguous areas and matters related to extension of services * * *.

5. AS 44.19.260(b) (2) provides:
   The local boundary commission may present to the legislature during the first 10 days of a regular session proposed local government boundary changes, including gradual extension of services of incorporated cities into contiguous areas upon a majority approval of the voters of the contiguous area to be annexed and transition schedules providing for total assimilation of the contiguous area and its full participation in the affairs of the incorporated city within a period not to exceed five years.

6. Art. X, § 12 of the Constitution of the State of Alaska provides:
   *Boundaries.* A local boundary commission or board shall be established

by law in the executive branch of the state government. The commission or board may consider any proposed local government boundary change. It may present proposed changes to the legislature during the first ten days of any regular session. The change shall become effective forty-five days after presentation or at the end of the session, whichever is earlier, unless disapproved by a resolution concurred in by a majority of the members of each house. The commission or board, subject to law, may establish procedures whereby boundaries may be adjusted by local action.
   AS 44.19.340 provides:
   *When boundary change takes effect.* When a local government boundary change is proposed to the legislature during the first 10 days of any regular session, the change becomes effective 45 days after presentation or at the end of the session, whichever is earlier, unless disapproved by a resolution concurred in by a majority of the members of each house.

7. SLA 1965, ch. 51.

Assembled: . . II" submitted February 2nd, 1965, which recommendations became law pursuant to Sections 44.19.260 AS and 44.19.340 AS, as confirmed by Chapter 51, Session Laws of Alaska, 1965; and,

IT IS FURTHER ORDERED that, following March 19th, 1965, and thereafter all the residents of the area described in the Order incorporating the second class City of Dillingham, whether or not they were included within the limits of the fourth class [city] of Wood River, owed to the government of the Second Class City of Dillingham, all of the obligations owed by other citizens of the City of Dillingham, including the obligation to pay real property assessments thereafter validly made and generally to be governed in all respects by the government of the Second Class City of Dillingham.

This appeal followed.

Article X, Section 7 of the Alaska Constitution provides that cities may be dissolved "in a manner prescibed by law." The legislature has provided for the dissolution of cities in AS 29.10.543–29.10.549, 29.25.500 and 29.80.010–29.80.050. These statutes generally provide for dissolution upon an election when the population of a city drops below a certain number, or upon a court order after a finding that a city has ceased to function as a city government. Since none of these methods was followed in the dissolution of the city of Wood River, appellants maintain that Wood River was not dissolved "in the manner provided by law", and therefore still exists as a municipal corporation in its own right.

The local boundary commission has the constitutional authority to "consider any proposed local government boundary change." It may present any such proposed change to the legislature, and the change becomes effective "forty-five days after presentation or at the end of the session, whichever is earlier, unless disapproved by a resolution concurred in by a majority of the members of each house." [8]

In Fairview Public Utility District No. 1 v. City of Anchorage [9] we held that the authority vested in the local boundary commission by the Constitution was sufficient to effect, by means of a local government boundary change proposed by the commission, the annexation to the City of Anchorage of the Fairview Public Utility District No. 1, an area entirely surrounded by the city. The situation here is not dissimilar. The fourth class city of Wood River was encompassed within the boundaries of the second class City of Dillingham. Although the boundary commission's proposal was to confirm the boundaries of the City of Dillingham and to dissolve the city of Wood River, rather than to annex Wood River to Dillingham, the effect is the same. When the legislature failed to disapprove of the commission's proposal, the commission's local boundary change, which consisted of the abolition of the boundary of Wood River and the confirmation of the boundary of the City of Dillingham, had the effect of making Wood River a part of the City of Dillingham.

When the boundary commission's proposal for boundary change became effective, the city of Wood River was dissolved, even though the statutory procedures for dissolution of cities were not followed. The basic purpose for creating the boundary commission and conferring upon it the powers that it possesses was to obviate the type of situation that existed here where there was a controversy over municipal boundaries which apparently could not be settled at the local level. As we pointed out in the *Fairview* case, the concept that was in mind when the local boundary commission section of the Constitution was being considered by the constitutional convention was that local political decisions do not usually create proper boundaries and

---

8. Alaska Const. art. X, § 12.

9. 368 P.2d 540 (Alaska), appeal dismissed, 371 U.S. 5, 83 S.Ct. 39, 9 L.Ed.2d 49 (1962).

that boundaries should be established at the state level.[10] The purpose of the boundary change effected in this case by the boundary commission and the legislature was to establish boundaries at a state level, and resolve a conflict that could not be properly solved at the local level, by doing away with two separate governments in a single community and avoiding multiplication of facilities and services, duplication of tax burdens, and inevitable jurisdictional conflict and chaos. When the boundary change became effective, the city of Wood River was extinguished as a municipal corporation and its property, powers and duties were then vested in the City of Dillingham.[11]

The judgment is affirmed.

10. Fairview Pub.Util.Dist. No. 1 v. City of Anchorage, 368 P.2d 540, 543 (Alaska 1962).

11. Id. at 545.